AO 91 (Rev.11/11) Criminal Complaint

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 20, 2026

SEAN F. McAVOY, CLERK

## United States District Court
### for the
## Eastern District of Washington

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff,* | ) |
| | )    Case No.: 4:26-mj-07098-ACE |
| v. | ) |
| SKY STEVEN BENNETT, | ) |
| *Defendant.* | ) |
| | ) |

### CRIMINAL COMPLAINT

I, *Daniel Teel*, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) April 20, 2026, in the county of Benton in the Eastern District of Washington, the defendant, *SKY STEVEN BENNETT,* violated:

18 U.S.C. § 2252A(a)(5)(B), (b)(2) - Possession of Child Pornography

This complaint is based on these facts:

☒Continued on the attached sheet.

DANIEL P TEEL
Digitally signed by DANIEL P TEEL
Date: 2026.04.20 21:54:24 -07'

_____
*Complainant's signature*

*Daniel Teel, Special Agent, HSI*
_____
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: __**April 20, 2026**__

City and state: <u>Spokane, Washington</u>

_____
*Judge's signature*

*James A. Goeke, United States Magistrate Judge*
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Daniel Teel, a Special Agent with Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging SKY STEVEN BENNETT ("BENNETT") with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(b), occurring on or about April 20, 2026, in Richland, Washington, in the Eastern District of Washington.

## SOURCES OF INFORMATION

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses.  Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case.  Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant.  My understanding of the facts and circumstances of the case may evolve as the investigation continues.

Affidavit of SA DANIEL TEEL
- 1 –
4:26-mj-7098-ACE

## AFFIANT BACKGROUND

4.      I am a Special Agent (SA) with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been since September 29, 2025.  Currently, I'm assigned to the Resident Agent in Charge (RAC) Yakima field office, located in Yakima, Washington. My primary operations are based out of Richland, Washington, located in the Eastern District of Washington.

5.      Prior to my employment as a Special Agent, I served as a Deputy Sheriff in Walla Walla County Washington from 2017-2025. During my tenure with the Sheriff's Office, I held a variety of positions including Patrol Deputy, Gang Investigator, Patrol Corporal, and Major Crimes Detective. While working as a Gang Investigator, I specialized in the investigation of Outlaw Motorcycle Gangs (OMG). During my career with the Sheriff's Office, I conducted numerous investigations including gang-related investigations; trafficking of firearms, controlled substances, and stolen property; homicides; major fraud and identity theft; robbery; assault; sexual assault; and child exploitation cases.

6.      During my employment with the Walla Walla County Sheriff's Office, I was cross designated as a Federal Task Force Officer with the United States Marshals Service and Homeland Security Investigations.  As a TFO and Detective, I have served as affiant on numerous search warrants.  I have participated in the investigation of cases involving the use of computers and the Internet to commit violations of state and federal child exploitation laws.

7.      I have investigated criminal violations relating to child exploitation, including violations involving enticement and transportation of minors for illegal sexual activity and related crimes, and violations involving the production, advertisement, transportation, distribution, receipt and possession of child

pornography, and attempts or conspiracies to commit those crimes. I have participated in numerous seizures of computer systems and related devices, as well as other evidence pertaining to violations of both federal and state law.

8.     I have participated in multiple aspects of child exploitation investigations, including conducting surveillance, interviewing suspects, and executing arrest and search warrants. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures.

9.     Prior to my employment as a Deputy Sheriff, I served as a Police Officer in Ketchikan Alaska, where I was assigned to the Patrol Division from 2014-2016. During my career at the Ketchikan Police Department my primary responsibilities included uniformed patrol, traffic enforcement, proactive policing, and responding to calls for service. As a Patrol Officer I conducted investigations into a wide variety of civil infractions and criminal offenses, including civil disturbances, violations of municipal code, fraud, theft, assault, domestic violence, robbery, burglary, illegal drug possession and distribution, missing persons cases, and death investigations.

10.     I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program (CITP), Washington State Criminal Justice Training Commission (CJTC), Law Enforcement Officer Training Academy, and the Alaska Police Standards Council (APSC) certified CTC Police Academy.

11.     I received additional law enforcement certifications from both the Washington State CJTC and Alaska APSC including First Line Supervisor certification, Field Training Officer certification, Patrol Tactics Instructor

certification, and Advanced Roadside Impaired Driver Enforcement (ARIDE) certification. I have served as a law enforcement instructor at the local, regional, and national level providing training on violence de-escalation, patrol tactics, and Outlaw Motorcycle Gang (OMG) investigations.

## APPLICABLE STATUTES

13.     I am investigating potential attempts and completed violations of 18 U.S.C. § 2252A(a)(5)(b) involving the possession of child pornography.  This offense is set forth as follows:

a. 18 U.S.C. § 2252A(a)(5)(b) prohibits any person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b. 18 U.S.C. § 2256(8)(A) defines "child pornography" (also referred to as "CSAM") as, *inter alia*, "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."

c. 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated[:] sexual intercourse, including genital-genital, oral-genital,

Affidavit of SA DANIEL TEEL
- 4 –
4:26-mj-7098-ACE

anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the anus, genitals or pubic area of any person."

## STATEMENT OF PROBABLE CAUSE

14.    Based on the facts described below, I have probable cause to believe that SKY STEVEN BENNETT ("BENNETT") has possessed child pornography, in violation of 18 U.S.C § 2252A(a)(5)(b), on or about April 20, 2026, in Benton County, Washington.

15.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other federal agents, state law enforcement officers, and/or witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

16.    In 2013, BENNETT was convicted of Receipt of Child Pornography, in violation of 18 U.S.C. § 2552A(a)(2), in the United States District Court- Eastern District of Washington, Case No. 2:13-CR-6062-001.  BENNETT was sentenced to five (5) years of imprisonment to be followed by a lifetime of supervised release.

17.    The Plea Agreement is attached to this Affidavit.  As detailed in the facts section of that Plea Agreement, in 2012, BENNETT was employed with a Department of Energy Contractor, Columbia Energy and Environmental Services (CEES).  The investigation into BENNETT at CEES stemmed from an allegation that he was mishandling electronic information at CEES.  During that investigation, BENNETT displayed an extraordinary level of technological expertise; he created a back door into the CEES servers to delete child pornography files stored on a personal hard disk drive that was attached to his work computer.  BENNETT also accessed a sensaphone in the CEES server room to enable him to hear what was being said in the CEES

server room.  During the investigation, BENNETT admitted that he had engaged in the downloading of child pornography from the Internet since he was 17 years old (BENNETT was 34 years old in 2013) and that those images and videos were on the personal hard disk drive in possession of CEES.  The Richland Police Department conducted the initial investigation and executed search warrants on BENNETT's residence, person and vehicle.  The investigation revealed BENNETT was believed to be a collector of child pornography.  Through the review of the child pornography files contained on BENNETT's computer child pornography collection, a forensic examiner determined that BENNETT began receiving images of child pornography on or about September of 2000, with a final date of receipt of August 22, 2012.

18.    When BENNETT was released from the Bureau of Prisons, he commenced supervision with the United States Probation Office in the Eastern District of Washington.  BENNETT'S current conditions of supervision include a provision requiring BENNETT to identify his personal electronic devices.  Those devices are subject to monitoring by the United States Probation Office.

19.    BENNETT currently runs an IT services company called Alpha Nerd in Richland, Washington.  I accessed the website for this company at https://alphanerdinc.com/ this evening.  The services provided include "Laptop and Desktop Repair, Business Systems Administration, Wi-Fi and Networking, and Console Repairs."

20.    On April 20, 2026, BENNETT'S United States Probation Officer, Ashleigh Miller (USPO Miller), received an alert from the software monitoring platform used by USPO on one of BENNETT's known electronic devices, his work computer. The software alerted USPO Miller that BENNETT's device was accessing potentially prohibited sexually explicit material through his work computer via Internet Explorer. USPO Miller explained that the software would also have alerted

Affidavit of SA DANIEL TEEL
- 6 –
4:26-mj-7098-ACE

BENNETT regarding the flagged material and the alert to USPO. After USPO Miller received the alert, BENNETT reached out to her.  BENNETT reported that the flagged activity stemmed from work he was doing, specifically data recovery on an SD card that was owned by a client of his business (Alpha Nerd). USPO Miller asked BENNETT to provide evidence of the work he was doing. BENNETT sent USPO Miller a screenshot of an invoice for the work.

21.    Approximately one and a half hours later, BENNETT contacted USPO Miller and told her that the SD card actually belonged to him and not a client. USPO Miller advised me via email of the following: "that he (BENNETT) was going through old hardware while moving his office location and found an SD card that was his, reportedly since prior to his arrest for the instant offense. He claims this was among the items returned by RPD at the culmination of his investigation. He did a data recovery on it and noted files that contained explicit content. He called me and self-surrendered it as he didn't want it in his possession-when asked if he viewed any of the files, he denied. When asked if there was only adult material or CSAM as well, he said 'I think both.'"

22.    Richland USPO Jose Valencia (USPO Valencia) contacted BENNETT at Alpha Nerd in Richland, Washington.  BENNETT provided the SD card, a blue 4 gigabyte secure digital card (SD card), to USPO Valencia.

23.    At approximately 5:00 pm, I proceeded to the United States Probation office in Richland, Washington.  I received SD card from USPO Supervisor Janie Coranado. I transported the SD card to the Richland Police Department (RPD). Richland Police Department Detective Eric Edwards (Det. Edwards), a certified computer forensic examiner, conducted a preliminary review of the SD card.  Det. Edwards and I reviewed some of the content of the SD card. The SD card contained images of adult females wearing bikinis. Det. Edwards also located deleted files on

the SD card.  These files were reviewed by me and Det. Edwards and were determined to be approximately 16 images files containing child pornography. I ran the hash values of the 16 files against a law enforcement database of known hash values of child pornography series.  10 of the images had hash values that matched known series images of child pornography. Many of the images depicted minor females exposing their vaginas. One (1) image was of an erect penis penetrating a clearly prepubescent vagina- the image was one of the series images from previously identified child pornography.

24.    Det. Edwards and I reviewed the RPD records pertaining to BENNETT'S previous RPD investigation. There was no record of the RPD seizing any SD card or returning any SD card to BENNETT.  I also contacted Federal Bureau of Investigation Special Agent Ryan Snider.  He reviewed FBI records pertaining to BENNETT's prior investigation and found no record of any SD card seizure or return.

## CONCLUSION

25.    Based on the facts stated above, I respectfully submit that there is probable cause to believe that BENNETT has possessed child pornography, in violation of 18 U.S.C § 2252A(a)(5)(b).  I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

DANIEL P TE  Digitally signed by DANIEL P TE
Date: 2026.04.20 21:52:58 -07'0

Daniel Teel, Special Agent
Homeland Security Investigations

Sworn to telephonically and signed electronically on this 20th day of April, 2026.

James A. Goeke
United States Magistrate Judge

Affidavit of SA DANIEL TEEL
- 8 –
4:26-mj-7098-ACE

MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Stephanie J. Lister
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 22 2013

SEAN F. McAVOY, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.

SKY STEVEN BENNETT,

                    Defendant.

Case No.: 13-CR-06062-WFN

Plea Agreement

Plaintiff, United States of America, by and through MICHAEL C. ORMSBY,

United States Attorney, for the Eastern District of Washington, and Stephanie J.

Lister, Assistant United States Attorney for the Eastern District of Washington, and

Defendant, SKY STEVEN BENNETT, and the Defendant's counsel, George E.

Telquist, agree to the following Plea Agreement:

        1.      Guilty Plea and Maximum Statutory Penalties:

        The Defendant, SKY STEVEN BENNETT, agrees to plead guilty, pursuant to

Federal Criminal Procedure Rule 11(c)(1)(c), to Count 1 of the Indictment filed on

PLEA AGREEMENT - 1
P31003jm.sla.dotm

August 22, 2013, charging the Defendant Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).

The Defendant, SKY STEVEN BENNETT, understands that the charge contained in the Indictment is a Class C Felony. The Defendant, SKY STEVEN BENNETT, also understands that the maximum statutory penalty for Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), is not less than 5 years nor more than 20 years imprisonment; a fine not to exceed $250,000; a term of supervised release of up to life; a Special Penalty Assessment of $100; and registration as a sex offender.

The Defendant, SKY STEVEN BENNETT, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S.

PLEA AGREEMENT - 2
P31003jm.sla.dotm

Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States agree to jointly recommend that the Defendant be sentenced to five years imprisonment, to be followed by 20 years supervised release, for receipt of child pornography. If the Court does not accept the plea or chooses to sentence the Defendant to a greater or lesser sentence than the United States and the Defendant have agreed upon, the Defendant and the United States may each withdraw from the plea and this agreement is null and void.

PLEA AGREEMENT - 3
P31003jm.sla.dotm

3.  <u>Waiver of Constitutional Rights:</u>

The Defendant, SKY STEVEN BENNETT, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a.  The right to a jury trial;

b.  The right to see, hear and question the witnesses;

c.  The right to remain silent at trial;

d.  The right to testify at trial; and

e.  The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.  <u>Elements of the Offense:</u>

The United States and the Defendant agree that in order to convict the Defendant of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), the United States would have to prove beyond a reasonable doubt the following elements:

PLEA AGREEMENT - 4
P31003jm.sla.dotm

a. First, from on or about September 2000, through on or about August 22, 2012, within the Eastern District of Washington, the Defendant, SKY STEVEN BENNETT, knowingly received material that contained images of child pornography, as charged;

b. Second, that the material had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer, or that the material was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; and

c. Third, that at the time he received the material, the Defendant believed that such images constituted child pornography.

5.     Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for SKY STEVEN BENNETT 's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

PLEA AGREEMENT - 5
P31003jm.sla.dotm

On August 16, 2012, Sky Steven Bennett was interviewed by members of the Columbia Energy and Environmental Services (CEES) Human Resource (HR) Department. During the interview, HR representatives informed Bennett that they were conducting an internal investigation related to his activities, and of his possible mishandling of CEES information contained on a personal HDD brought by Bennett into CEES space. Bennett denied any wrongdoing, and admitted that the HDD belonged to him. Bennett was informed that he was not to return to the office and that he was not to access any CEES computer system. Thereafter, Bennett was escorted from the building. Bennett was insistent that he retrieve his personal property from his office, especially his external HDD. CEES HR denied Bennett's request to retrieve any items from his office.

On August 17, 2012, CEES Information Technology (IT) staff started the process of copying the data contained on Bennett's HDD across the network to another computer. Later that same day after the copy had started; IT staff discovered that files that had previously been contained on the HDD had been deleted. On August 17, 2012, CEES IT staff attempted to recover the deleted files from the HDD. During the file recovery process, they observed files contained on the HDD that had names indicative of and/or related to child pornography. The files were not opened nor viewed. Upon the discovery of potential child pornography, CEES employees contacted the Richland Police Department (RPD).

PLEA AGREEMENT - 6
P31003jm.sla.dotm

On August 18, 2012, CEES IT staff discovered that a back door had been created on their servers through the creation of an account named "SRVACCOUNT". Through review of the network logs, it was discovered that this account had been remotely connected to on August 17, 2012 via IP Address 96.41.217.34. Through further review, it was believed that this account had been connected to and was used during the deletion of files from Bennett's HDD.

Based on information received from CEES, Richland Police Detectives (RPD) obtained a search warrant on August 22, 2012 for the search of Bennett's person, vehicle, and residence located at his residence in Richland, WA.

On August 22, 2012, RPD executed the warrant at Bennett's residence, while simultaneously arresting Bennett during a traffic stop. Bennett was transported back to the RPD, where he was then advised of his rights and interviewed. During the interview, Bennett provided a signed statement. In part, Bennett admitted to accessing the CEES network and remotely connecting the HDD attached to his CEES work computer. In his statement, Bennett claimed to encrypt corporate data on the HDD as a means to "protect it". Bennett then deleted the unencrypted data. Bennett admitted to connecting to the SENSAPHONE on the evening of 8/16/2012 to "see what was occurring."

Bennett admitted that since the age of 17 he has downloaded from the Internet sexually explicit images and videos of children. Bennett stated that these images and

PLEA AGREEMENT - 7
P31003jm.sla.dotm

videos were contained on his external HDD now in the possession of CEES, and on an external USB thumb drive. Bennett stated these images and videos were the only method by which he could achieve arousal. Further, Bennett stated that he remotely connected to the CEES network to delete these images and videos from his external HDD.

On August 30, 2012, FBI SA David Whitlow interviewed the personnel at CEES regarding the unauthorized access to the CEES computer and the files discovered that contained child pornography. On March 20, 2013, SA Whitlow reviewed evidence provided by RPD. SA Whitlow observed hundreds of images, and videos that were consistent with child pornography. There were approximately 5,000 images; over 600 images were determined to contain child pornography. These graphic files depicted infants, toddlers, and prepubescent females that were in various stages of undress to include fully nude. These children were vaginally, anally, and orally penetrated with erect adult male penis's; they were anally, and vaginally penetrated with adult male fingers, and vibrators. The graphic images included bondage, and bestiality. In some instances the infants and toddlers cried out in pain based on the vaginal and anal penetration with either a penis or finger.

Bennett is believed to have been a collector of child pornography for an extensive period of time. Through a review of identified child pornography files contained on Bennett's computer child pornography collection, a forensic examiner

PLEA AGREEMENT - 8
P31003jm.sla.dotm

determined that Bennett began receiving child pornography images on or about September of 2000. The final date of receipt of child pornography on Bennett's computer was on or about August 22, 2012.

6. The United States Agrees to Dismiss:

At the time of sentencing, the United States agrees to move to dismiss Count 2 of the Indictment, which charges the Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

7. United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

a. Base Offense Level:

The United States and the Defendant agree that the base offense level for Receipt of Child Pornography is 22. See U.S.S.G. §2G2.2(a)(2).

b. Specific Offense Characteristics:

The United States and the Defendant also agree and stipulate that the base offense is decreased by an additional two (2) levels because Defendant's conduct did not involve distribution. See U.S.S.G. §2G2.2(b)(1).

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional two (2) levels because the material involved children who had not attained the age of 12. See U.S.S.G. §2G2.2(b)(2).

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional four (4) levels because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. See U.S.S.G. §2G2.2(b)(4).

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional two (2) levels because the offense involved the use of a computer for receipt, or for accessing with intent to view the material. See U.S.S.G. §2G2.2(b)(6).

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional five (5) levels because the offense involved over 600 images of child pornography. See U.S.S.G. §2G2.2(b)(7).

c.    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than October 21, 2013, the United States will move for a three (3) level

PLEA AGREEMENT - 10
P31003jm.sla.dotm

downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

Therefore, the United States and the Defendant agree that the Defendant's final adjusted offense level would be 30.

d.    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no

PLEA AGREEMENT - 11
P31003jm.sla.dotm

representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

8. Jointly Recommended Term of Imprisonment:

The United States and the Defendant agree that this plea agreement is entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) and to jointly recommend Defendant be sentenced to 5 years imprisonment and 20 years supervised release for receipt of child pornography. In addition, the parties agree that after the entry of a guilty plea, to recommend that the Defendant be continued on the release conditions previously imposed by the court.

9. Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

10. Supervised Release:

The United States and the Defendant agree to recommend that the Court impose a 20 year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

   a. that the Defendant not have contact with any child under the age of 18, without the presence of an adult and approved in advance by the Probation Officer, this includes prohibiting the Defendant from

PLEA AGREEMENT - 12
P31003jm.sla.dotm

having any contact with any child by telephone or the internet. The Defendant shall immediately report any unauthorized contact with minor-aged children to the Probation Officer;

b. that the Defendant allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, and any personal computing device that the Defendant possesses or has access to, including any internal or external peripherals. This may require temporary removal of the equipment for a more thorough inspection. The Defendant shall not possess or use any data encryption technique or program. The Defendant shall purchase and use such hardware and software systems that monitor the Defendant's computer usage, if directed by the Probation Officer;

c. that the Defendant shall not reside or loiter within 1000 feet of places where children under the age of 18 congregate, which includes primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, carnivals, recreation centers, and arcades;

d. that the Defendant shall not possess or manufacture any sexually stimulating, sexually explicit or sexually oriented material including videos, magazines, photographs, computer generated depictions, or

PLEA AGREEMENT - 13
P31003jm.sla.dotm

any other matter that depicts "sexually explicit conduct" involving children or adults, as defined by 18 U.S.C. § 2256(2). The Defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, message parlors, escort services, and strip bars. The Defendant shall not use any sex-related adult telephone number. The Defendant shall provide all his/her telephone records to monitor compliance, at the direction of the Probation Officer;

e. that the Defendant register as a sex offender, according to the laws of each state in which the Defendant resides, is employed, or is attending school. The Defendant shall provide verification of compliance with this requirement to the Probation Officer;

f. that the Defendant complete a sex offender evaluation, which may include periodic psychological, physiological, polygraph, plethysmography testing, and completion of the ABEL assessment, at the direction of the Probation Officer;

g. that the Defendant participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program. The Defendant shall allow reciprocal release of information

PLEA AGREEMENT - 14
P31003jm.sla.dotm

between the Probation Officer and the treatment provider. The Defendant shall contribute to the cost of treatment according to the Defendant's ability.

11.    Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

12.    Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

13.    Forfeiture:

The Defendant, SKY STEVEN BENNETT, agrees to voluntarily forfeit and relinquish all right, title and interest in all assets identified in the Notice of Criminal Forfeiture Allegations contained in the Indictment, to the United States, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of such assets, including, but not limited to the following:

1)    One Seagate External Hard Drive, bearing Serial Number: NA05GJH7;

PLEA AGREEMENT - 15
P31003jm.sla.dotm

2)   One Patriot 32 GB Thumb Drive, bearing Serial Number: OA7605192070;

3)   One Antec Tower , make Crucial, bearing Serial Number: 1202032CB9DE;

4)   One Antec Tower, make Western Digital Raptor, bearing Serial Number: WX31E51W7144; and,

5)   One Antec Tower, make Western Digital, bearing Serial Number: MATV285955.

seized from Defendant's residence on August 22, 2012, pursuant to a search warrant.

The Defendant stipulates that he is the sole owner of the assets identified in the Indictment and that no one else has an interest in the assets.

The Defendant acknowledges that the assets listed above that the Defendant is agreeing to forfeit are subject to forfeiture pursuant to 18 U.S.C. § 2253(a) and (b), as property used or intended to be used in any manner or part to commit or to facilitate the commission of the Receipt of Child Pornography charge alleged in the Indictment to which Defendant is pleading guilty.  The Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States, and to testify truthfully in any forfeiture proceeding.

The Defendant agrees to hold all law enforcement agents/officers, and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any asset covered by this agreement.

The Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

14.    Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15.    Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his/her right to appeal his/her conviction and the sentence the Court imposes, including any restitution order. Defendant further expressly waives his/her right to file any post-conviction motion attacking his/her conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

16. <u>Hyde Amendment Waiver:</u>

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

17. <u>Notice of Sex Offender Registration:</u>

The Defendant has been advised and understands, that as a convicted sex offender, under the Sex Offender Registration and Notification Act, a federal law, the Defendant must register and keep the registration current in each of the following jurisdictions: the location of the Defendant's residence, the location of the Defendant's employment; and, if the Defendant is a student, the location of the Defendant's school. Registration will require that the Defendant provide information that includes name, residence address, and the names and addresses of any places at which the Defendant is or will be an employee or a student. The Defendant understands that he/she must update his/her registrations not later than three business days after any change of name, residence, employment, or student status. The Defendant understands that failure to comply with these obligations subjects the Defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

PLEA AGREEMENT - 18
P31003jm.sla.dotm

18. **Integration Clause:**

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORMSBY
United States Attorney

B. Seel for Stephanie Lister

Stephanie J. Lister
Assistant U.S. Attorney

10.22.13

Date

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my

PLEA AGREEMENT - 19
P31003jm.sla.dotm

attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     __10/22/13__
SKY STEVEN BENNETT                   Date
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     __10/22/13__
George E. Telquist  Richard D. Whaley   Date
Attorney for the Defendant   WSBA #44317

PLEA AGREEMENT - 20
P31003jm.sla.dotm